In re CFP LIQUIDATING
ESTATE, Debtor.

Charles A. Stanziale, in his capacity as
Liquidating Trustee of CFP Liqui-
dating Estate, Plaintiff,

v.

Rite Way Meat Packers,
Inc., Defendant,

Gurrentz International
Corp., Defendant,

Kalle Nalo, Inc., Defendant,

R.B.R. Meat Co., Inc., Defendant,

Western Poultry Sales, Co., Defendant.

No. 07–10495 (PJW).
Adversary Nos. 09–50453(PJW), 09–
50417(PJW), 09–50427(PJW), 09–
50452(PJW), 09–50491(PJW).

United States Bankruptcy Court,
D. Delaware.

May 21, 2009.

William E. Chipman, Jr., Mark D. Olivere, Landis Rath & Cobb LLP, Wilmington, DE, for the Defendants.

William F. Taylor, Jr., Katharine L. Mayer, McCarter & English, LLP, Wilmington, DE, Charles A. Stanziale, Jr., Donald J. Crecca, Christine L. Barba, McCarter & English, LLP, Newark, NJ, Counsel to Charles A. Stanziale, Jr., Liquidating Trustee.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to five defendants' motions to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6) and Fed. R. Bankr.P. 7012, the complaints brought by the liquidating trustee of the CFP Liquidating Estate to recover preferential transfers from each of the defendants. For the reasons set forth below, I will deny all of the motions.

## BACKGROUND

The instant adversary proceedings originated from the bankruptcy case of Custom Foods Products, Inc. ("Debtor") filed on April 13, 2007. (Case # 07–10495(PJW).) On September 10, 2007, this Court confirmed Debtor's Joint Plan Under Chapter 11 of the Bankruptcy Code ("Plan") which established the CFP Liquidating Estate. (Doc. # 490.) Charles A. Stanziale was appointed the liquidating trustee ("Trustee") of that estate under the terms of the Plan on September 15, 2007.

Prior to filing for bankruptcy, Debtor was in the business of developing, manufacturing, and marketing pre-cooked meat, poultry, and pork products for sale to leading manufacturers of branded and private label packaged foods and national fast-food restaurant chains. As part of its ordinary course of business, Debtor purchased uncooked meat and meat products from various vendors and then processed that meat according to its own procedures and the proprietary procedures of its customers. (Doc. # 12, ¶ 5.) In particular, Debtor routinely purchased 50% lean "beef trimmings" from Rite Way Meat Packers, Inc. (Adv.Proc.# 09–50453, Doc. # 5, p. 2.), frozen boneless beef from Gurrentz International Corp. (Adv.Proc.# 09–50417, Doc. # 5, p. 2), meat casings from Kalle Nola Inc. (Adv.Proc.# 09–50427, Doc. # 6, p. 2), 100% "denuded rounds" and 100% lean "beef trimmings" from R.B.R. Meat Company, Inc. (Adv.Proc.# 09–50452, Doc. # 5, p. 2), and turkey wing meat and pork ham trim from Western Poultry Sales, Co. (Adv.Proc.# 09–50491, Doc. # 5, p. 2). Collectively these suppliers are referred to as the "Defendants."

Between January 13, 2007 and April 13, 2007, the ninety days preceding Debtor's bankruptcy petition, the Defendants received several transfers from the Debtor. These transfers were made by the Debtor on account of antecedent debts with the Defendants, including payments for goods (specifically, meat products) previously received from the Defendants. (*See, e.g.,* Adv. Pro. # 09–50453, Doc. # 1, ¶ 16.)[1]

---

1. The facts contained in this paragraph are based on the factual assertions contained in the Complaints. *See Pryor v. Nat'l Collegiate Athletic Assoc.,* 288 F.3d 548, 559 (3d Cir.

On March 16, 2009, the Trustee filed complaints against the Defendants seeking to avoid the ninety-day transfers pursuant to 11 U.S.C. § 547 (Count I), recover all avoided ninety-day transfers pursuant to 11 U.S.C. § 550 (Count II), and disallow any claims of the Defendants pursuant to 11 U.S.C. § 502(d) until all avoided ninety-day transfers had been paid (Count III). (*See, e.g., id.*) On April 15, 2009, the Defendants filed motions to dismiss the complaints in their entirety pursuant to Fed. R.Civ.P. 12(b)(6) and Fed. R. Bankr.P. 7012.

### STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient "factual allegations" which, if true, would establish "plausible grounds" for a claim: "the threshold requirement ... [is] that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atlantic v. Twombly,* 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting Fed.R.Civ.P. 8(a)(2)).[2] In deciding the motion, a court tests the sufficiency of the factual allegations: it evaluates whether a plaintiff is "entitled to offer evidence to support the claims," and "not whether a plaintiff will ultimately prevail." *Oatway v. Am. Int'l Group, Inc.,* 325 F.3d 184, 187 (3d Cir. 2003); *see also Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902 (3d Cir.1997) (noting that a motion to dismiss should be granted where "it appears to a certainty that no relief could be granted under any set of facts which could be proved"). Further, the allegations in the complaint are accepted as true and the complaint is construed "in the light most favorable to the plaintiff" to "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Sands v. McCormick,* 502 F.3d 263, 267–68 (3d Cir.2007) (quoting *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n. 7 (3d Cir.2002)).

### DISCUSSION

▮ In their motions to dismiss, the Defendants argue that the Trustee's claims fail as a matter of law because, pursuant to the Packers and Stockyards Act of 1921 ("PASA"), 7 U.S.C. §§ 181 *et seq.,* the identified payments were not property of the estate. Rather, the Defendants argue they were part of a statutory trust protected under PASA to which the Debtor held only bare legal title, and, accordingly, the Trustee cannot maintain an action under 11 U.S.C. § 547(b) because there was no "transfer of an interest of the debtor in property."

PASA requires that packers who purchase livestock on a cash basis hold such livestock—including meat and other products, accounts receivable, and proceeds derived therefrom—in a trust for the unpaid cash sellers. 7 U.S.C. § 196(b). As set forth in *In re Gotham Provision Co., Inc.,* 669 F.2d 1000, 1004 (5th Cir.1982), the application of PASA's trust provisions is limited to transactions in which:

(1) The commodities sold are "livestock," as defined in ... the Act;

(2) The purchaser of the livestock is a "packer," as defined in ... the Act;

(3) The transaction is a "cash sale";

---

2002) (noting that in evaluating whether a dismissal is proper, a court must accept all the factual allegations of the complaint as true).

**2.** The Third Circuit has held that the pleading standard adopted in *Twombly* is not limited to anti-trust claims as in *Twombly,* but is "intended to apply to the Rule 12(b)(6) standard in general." *Phillips v. County of Allegheny,* 515 F.3d 224, 232 (3d Cir.2008).

(4) The cash sellers have not received full payment for their livestock;

(5) The packer in question makes average annual purchases of more than $500,000; and

(6) The cash sellers have preserved the trust within the required period by giving notice to the packer and by filing that notice with the Secretary of Agriculture.

Additionally, the sale must take place in interstate commerce. 7 U.S.C. § 183.

Livestock is defined as "cattle, sheep, swine, horses, mules, or goats whether live or dead." 7 U.S.C. § 182(4). A packer is defined as: "any person engaged in the business ... of manufacturing or preparing meats or meat food products for sale or shipment in commerce, or ... of marketing meats, meat food products, or livestock products in an unmanufactured form acting as a wholesale broker, dealer, or distributor in commerce." *Id.* at § 191. A cash sale is defined as "a sale in which the seller does not expressly extend credit to the buyer." *Id.* at § 196(c). To "expressly extend credit," the parties must agree in writing to payment beyond the default two-day term set forth in PASA. *See In re Gotham*, 669 F.2d at 1005–06 (citing 7 U.S.C. § 228b(a)). If a seller expressly extends credit, the seller "waives [her or] his rights under the trust provisions" of PASA. *Id.* at 1006.

■ If these conditions are satisfied, a statutory trust is automatically created upon the delivery of the livestock to the purchaser. *See In re Fresh Approach, Inc.*, 51 B.R. 412, 423 (Bankr.N.D.Tex. 1985)[3]; *In re Frosty Morn Meats, Inc.*, 7 B.R. 988, 1005 (M.D.Tenn.1980). In the context of bankruptcy, if a trust exists, 11 U.S.C. § 541(d) excludes those assets in the trust from a debtor's estate. *In re Frosty Morn Meats*, 7 B.R. at 1005 ("[PASA] provides for a statutory trust fund which is not an asset of the bankrupt's estate."). Pursuant to 11 U.S.C. § 547, a preference action only can be maintained against a transfer of interest in the property in a debtor's estate. Accordingly, if PASA trusts exist as to the Defendants, the Trustee's preference actions as to assets in those trusts must fail. *See In re Fresh Approach*, 51 B.R. at 423 (concluding that a preference action could not be maintained because a PACA trust existed as to the specific assets).

Based on the alleged facts and pleadings, I cannot determine whether PASA applies to the identified payments. The Trustee's complaints are silent on whether the transactions were "cash sales" or whether PASA's notice requirements were satisfied. Likewise, the Defendants do not specify whether the transactions were "cash sales" as defined by PASA,[4] nor do

---

**3.** The court in *In re Fresh Approach* analyzed the claimant's rights under the Perishable Agricultural Commodity Act ("PACA"), 7 U.S.C. §§ 499a *et seq.* As noted by the Defendants, the provisions of PACA are sufficiently similar such that, as Congress dictated, case law interpreting one act is instructive when interpreting the other. *See In re Fresh Approach*, 51 B.R. at 419–20, n. 3 and 4.

**4.** The Defendants argue that PASA's "cash sale" requirement only applies to sales of livestock, not to meat or meat food products, which they contend are what was sold in the relevant transactions. The Defendants rely

on the language of § 196(b), which reads: "All livestock purchased by a packer in cash sales, *and all inventories of, or receivables or proceeds from meat, meat food products, or livestock products derived therefrom*, shall be held by such packer in trust for the benefit of all unpaid cash sellers of such livestock until full payment has been received by such unpaid sellers...." 7 U.S.C. § 196(b) (emphasis added). When this plain language is read literally, it is clear that initially a trust applies to the sale of livestock only. Once a trust as to that livestock is established, if the purchaser uses that livestock to create meat, meat

they specify whether PASA's notice requirements were fulfilled. Obviously, these are issues of fact. Accordingly, whether a preference action can be maintained turns on several issues of fact yet to be a matter of record here. Thus, the Trustee is entitled to offer evidence to support his claims.

## CONCLUSION

For the reasons set forth above, the Defendants' motions to dismiss are denied.

## ORDER

For the reasons set forth in the Court's memorandum opinion of this date, the Defendants' motions to dismiss are denied.

products, or livestock products, as defined commonly and by PASA, the trust also applies to the products derivatively created from the initial livestock. However, if the initial sale was not of livestock as defined by PASA, a PASA trust never existed regardless of whether there was a "cash sale." The Defendants argue the opposite—that a PASA trust is created anytime meat or meat products are sold to a packer. I do not believe the plain language of the section supports this reading. If the portions of the slaughtered animals sold in the relevant transactions do not fall under the definition of livestock, then no PASA trust was created upon their sale. Based on PASA's definitions of "livestock," "meat food products," and "livestock products," what exactly was sold and whether it falls under the definition of "livestock" is also an undeveloped issue of fact. *See id.* at § 182(3)-(5).